IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs, February 8, 2005

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES V. JCG, IN THE MATTER OF BJG, A Child Under Eighteen (18) Years of Age

**Direct Appeal from the Juvenile Court for Johnson County**
**No. 6032        Hon. William B. Hawkins, Judge**

---

**No. E2004-02103-COA-R3-PT  - FILED APRIL 4, 2005**

---

The Trial Court terminated the father's parental rights on several statutory grounds.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, joined.

Steve McEwen, Mountain City, Tennessee, for appellant.

Paul G. Summers, Attorney General and Reporter,
and
Elizabeth C. Driver, Assistant Attorney General, Nashville, Tennessee, for appellee.

**OPINION**

In this parental termination case, the father, JCG appeals the termination of his parental rights to BJG.

The biological parents married after BJG was born.  The mother  left the marriage, but returned to the marriage after approximately six months and the parties stayed together for approximately two years.  The mother left the marriage, and the parties divorced two years later in 1999, and the father was granted custody of the child.

In October 1999, the father was facing a felony DUI (4ᵗʰ DUI) and reckless endangerment charge in Tennessee. He fled the state to Maryland, where he purchased a house, and enrolled the child in school. On November 16, 1999 he was arrested in Maryland on a fugitive from justice warrant, having failed to appear in Johnson County Criminal Court. Being unable to make bail, the father remained in jail until December 17, 1999, when he was released because the Tennessee authorities had not taken him into custody.

When the father was arrested in Maryland, the child stayed with the father's nephew, David Guinn Jr. and his wife, who lived nearby. On November 18, 1999, the father's brother, Mark Guinn and the mother took the child from David Guinn Jr.'s residence and returned to Tennessee. After the father's release from jail, he met on December 30, 1999, with his sister, Geneva Eggers, in Damascus, Virginia, and advised Ms. Eggers that he was heading out west to visit relatives in Oregon and another sister in Utah, but that he wanted to find his son.

On November 21, 2000, the child's aunt and uncle, David and Judy Guinn, petitioned the Court and received temporary custody from Ruth Hodge, with whom the mother had left the child. The Order granting temporary custody included a no-contact order against both parents. The child stayed with David and Judy Guinn from November 18 to December 6, 2000, at which time they petitioned the court for the State to take custody. The child was taken into custody by the Department of Children's Services on December 6, 2000 and placed in foster care at Freewill Baptist Children's Home. The Department mailed a certified letter to the father on January 30, 2001, after running the father's social security number through the DCS computers. The father traveled to Utah in early 2000 to visit his sister and niece, and stayed for several months. He parked his camper on the property behind the house, which was connected to his sister's utilities, for which he paid her $100.00 per month. At some point he had an apartment address in Utah, and on February 3, 2001, the father was arrested in Utah for second degree child sexual abuse over an incident involving his great niece. The charges arose out of an incident occurring in a garage located on the property between his niece's house and where his camper was located. On June 6, 2001 he pled guilty to one charge of sexual abuse of a minor, then changed his plea to nolo contendre on June 26, 2001. On July 25, 2001, he was sentenced to one to fifteen years in the Utah penitentiary.

The petition for termination of parental rights was filed on June 28, 2001, alleging grounds of abandonment, including the failure to visit the child, failure to support the child or make reasonable payments toward his support for the four months preceding incarceration, and wanton disregard for the child's welfare. The mother had voluntarily surrendered her parental rights on August 14, 2001, and is not a party to this appeal.

After an evidentiary hearing, the trial court terminated the father's parental rights on several statutory grounds, and the father has appealed. The father's first issue on appeal is that the Trial Court erred in denying his Motion to be personally present in court during the trial.

Tenn. Code Ann. § 36-1-113(f)(3) provides that an incarcerated parent has the right to participate in the proceedings and contest allegations that his/her parental rights should be

-2-

terminated. The inmate's participation may be by teleconference, telecommunication or other means deemed by the court as appropriate under the circumstances. There is no constitutional right for a prisoner defendant to be personally present in civil court proceedings, so long as the inmate and his counsel have adequate opportunity to confer confidentially, and, to petition the court where necessary and otherwise have the opportunity to present a meaningful defense. *State v. Moss*, 1998 WL 122716 at 84 (Tenn. Ct. App. March 20, 1998). The decision to permit a prisoner to be physically present is within the sound discretion of the trial court. *In re C.E.P.,* 2004 WL 2191040 (Tenn. Ct. App. Sept. 29, 2004); *Davis v. Jensen*, 2002 WL 31528525 (Tenn. Ct. App. Nov. 15, 2002); *Rice v. Bradberry*, 1999 WL 86980 (Tenn. Ct. App. Feb. 23, 1999).

The record shows that the Trial Court approved expenses for counsel's travel to Utah to meet with his client in preparation of his defense, and the father participated in each hearing by speaker telephone. Counsel was permitted to confer privately with his client frequently, and as needed during the hearings. After the State presented its proof, the hearing was adjourned in order for the transcript to be produced and forwarded to the father for review with his counsel before cross-examination of the State's witnesses, and before putting on his proof. We hold the Trial Court did not abuse its discretion in the way and manner it conducted the proceedings. This issue is without merit.

The next issue raised by the father is that the Court impermissibly allowed the State to introduce additional grounds for termination after the commencement of proof.

The bulk of the State's proof was presented on July 30, 2002. Thereafter, the guardian *ad litem* filed a motion on August 20, 2002, to consider alternate grounds for termination under Tenn. Code Ann. § 36-1-113(g)(3) and 36-1-113(g)(4). Although styled as a "Motion to Consider Alternative Grounds for Termination of Parental Rights" the parties and the Court agreed that it was essentially a motion to amend the petition. With respect to § 36-1-113(g)(3), the so-called "persistent grounds" subsection, the motion is moot because the original petition filed by the State on June 28, 2001 requested findings by tracking the language of the statute without directly citing it.

In a very recent decision in a termination of parental rights case, filed after the briefs in this case, the Court affirmed the trial court's granting a motion to amend pleadings to add additional grounds made during trial, but before presentation of the defendant's proof. *State v. J.M.F.,* 2005 WL 94465 at *9 (Tenn. Ct. App. Jan. 11, 2005); *see also*, *In re M.E.A. by Exum v. Moody,* 2004 WL 316977 (Tenn. Ct. App. Feb. 19, 2004).

In this case the Trial Court allowed the defendant additional time if necessary to prepare his defense in light of the additional grounds. The petitioner closed its proof on September 10, 2002, and defendant did not present his evidence until January 2004, after the transcripts of the State's proof were transcribed and sent to the father for his review. The father demonstrated no prejudice. This issue is likewise without merit.

Next, the father claims that the State failed to prove any of the statutory grounds alleged for termination by clear and convincing evidence, and failed to prove by clear and convincing evidence that termination of the father's rights was in the child's best interest.

After hearing evidence, the Trial Court terminated the father's rights on several statutory grounds. We conclude the determinative issue is whether the State proved abandonment, pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv). On this ground, the State is required to show by clear and convincing evidence that "the parent or guardian is engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child." The Trial Judge, in finding that the evidence supported this statutory ground for termination said:

> The Court finds that when . . . [the father] absconded from the State of Tennessee to avoid a Court appearance on a felony DUI, that he took the subject child with him. That when . . . [the father] was released in the State of Maryland, came to Damascus, Virginia, and then left, according to his testimony, for the State of Oregon, that he again left the child here in Johnson County, Tennessee, knowing full well that the child was here. Since that time he has had no communication with the child. He has paid no support for the child. He has made no visits with the child. This from the time of his release in Maryland from 16 November, 1999 to the time of his arrest in the State of Utah until the 3rd day of February of 2001, and the next four months preceding. . . . [The father] sent no child support while in Utah or any reasonable payment. The Court finds that as would regard wanton disregard for the welfare of a child. The evidence is clear and convincing that also pending in the General Sessions Court of Johnson County [is] a reckless endangerment involving the subject child, . . .

Our review of the Trial Court's specific finding of fact in termination of parental rights cases is *de novo* in accordance with Tenn. R. Civ. P. 13(d), and presumes the findings correct unless the evidence preponderates otherwise. *See, In re F.R.R.*III, 2005 WL 473470 at *3 (Tenn. Ct. App. March 1, 2005). The record establishes that the father was subjected to repeated incarceration, and had a long history of drinking problems. The evidence does not preponderate against the Trial Court's finding on this issue of clear and convincing evidence as grounds for termination under this statutory provision. *See, In re D.N.G.*, 2004 WL 2314534 (Tenn. Ct. App. 2004).

Finally, we hold that clear and convincing evidence supports the Trial Court's decision that termination was in the child's best interest.

The Trial Court was required to find this by clear and convincing evidence based on Tenn. Code Ann. § 36-1-113(c). Several of the factors set forth in this section were established by the proof. The father has made no lasting adjustment of circumstances for a safe home for the child to return to. The father was incarcerated at the time of trial and was serving an indeterminate sentence of up to 15 years, and offered no long term placement of the child with relatives during his

incarceration. In fact, he has not seen his child for over four years. These circumstances indicate that it would be highly unlikely that a meaningful relationship can be established with the child, and taking into account the father's problems with alcohol and his criminal record, we conclude the Trial Court properly determined the termination of the father's parental rights was in the child's best interest.

For the foregoing reasons, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to the father.

_____
HERSCHEL PICKENS FRANKS, P.J.